UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    Case No. 10-cr-20225

      Plaintiff,                          Stephanie Dawkins Davis
v.                                            United States District Judge

ROSSAHN BLACK,

      Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE WITHOUT PREJUDICE [ECF NO. 192, 199]

### I.   INTRODUCTION AND FACTUAL BACKGROUND

On June 1, 2012, a jury found Defendant Rossahn Black guilty of illegally possessing firearms.  The court sentenced Black to 300 months of imprisonment and five years of supervised release.  (ECF No. 111).  Black subsequently filed a motion to vacate sentence, which the court granted in part based on the Supreme Court's decision striking down the residual clause of the Armed Career Criminal Act in *Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551 (2015).  (ECF No. 168).  The court re-sentenced Black in 2017 to a total of 252 months imprisonment—120 months on the first count and 66 months on each of the second and third counts—followed by 6 years of supervised release—2 years for each count, each to run consecutively.  (ECF No. 171).  More recently, Black filed a *pro*

1

*se* motion for compassionate release on August 9, 2020.  (ECF No. 192).  On

September 1, 2020, the court ordered the appointment of a federal defender to

represent Black in this matter.  (ECF No. 193).  The matter was subsequently

assigned to Ebony Ellis who accepted appointment to this case under the Criminal

Justice Act on September 3, 2020.  On September 18, 2020, Ms. Ellis filed a

response to the Government's opposition to Black's initial *pro se* motion for

compassionate release.  (ECF No. 199).  Black also filed a *pro se* motion to

amend/correct his August 9, 2020 motion for compassionate release on September

18, 2020 which the court ruled on in a separate order and a letter to the court on

October 9, 2020.  (ECF Nos. 203 and 207, 208). The Government filed a reply to

Black's response filed by Ms. Ellis on September 24, 2020.  (ECF No. 201). [1]

Black is currently incarcerated at FCI Gilmer in Glenville, West Virginia.

Gilmer is a medium security prison with a total of 1,276 inmates.  Black is 43

years old.  He has completed about 51% of his current prison sentence, and he is

expected to be released on February 13, 2028.  (ECF No. 196, PageID.2780).

## II.    LEGAL STANDARD

Criminal defendants may move for compassionate release pursuant to 18

U.S.C. § 3582.  As amended by the First Step Act of 2018, the relevant statutory

---

[1] The briefing sequence does not quite align with the typical order in view of Ms. Ellis's appointment after Black had already filed his motion *pro se*.

2

language states that a court may grant compassionate release under the following

circumstances:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or
> upon motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days from the receipt
> of such a request by the warden of the defendant's facility, whichever is
> earlier, may reduce the term of imprisonment (and may impose a term of
> probation or supervised release with or without conditions that does not
> exceed the unserved portion of the original term of imprisonment), after
> considering the factors set forth in section 3553(a) to the extent that they
> are applicable, if it finds that--
> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c).  Thus, under the statute, Black must exhaust his

administrative remedies and show "extraordinary and compelling reasons" to be

eligible for compassionate release.  In order to determine if extraordinary and

compelling reasons exist to release Black, the Court must determine if a sentence

reduction is "consistent with applicable policy statements issued by the [United

States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).  The applicable

policy statement states:

> 1. Extraordinary and Compelling Reasons.--Provided the defendant meets the
> requirements of subdivision (2), extraordinary and compelling reasons exist
> under any of the circumstances set forth below:
> (A) Medical Condition of the Defendant.--
> (i) The defendant is suffering from a terminal illness (i.e., a serious and
> advanced illness with an end of life trajectory). A specific prognosis of life
> expectancy (i.e., a probability of death within a specific time period) is not
> required. Examples include metastatic solid-tumor cancer, amyotrophic
> lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

3

(ii) The defendant is--
(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover
[...]
(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13.  Lastly, courts must also consider the factors set forth in 18 U.S.C. 3553(a) . . . "and whether the defendant is a danger to the safety of any other person or to the community."  *Id.*

### III.   DISCUSSION

The parties in this case agree that the Defendant has exhausted his administrative remedies.  (ECF No. 196, PageID.2781; ECF No. 199, PageID.3013).  Therefore, the court need not address the exhaustion requirement any further.

Black argues that extraordinary and compelling reasons warrant compassionate release.  (ECF No. 199 PageID.3014).  First, he states that FCI Gilmer, and all prisons, have a higher chance of spreading COVID-19.  (*Id.* at PageID.3014).  Second, Black states that he has underlying health conditions that put him at risk for serious health complications if he contracts COVID-19.  (*Id.* at

PageID.3017).  Lastly, he asserts that the sentencing factors outlined in 18 U.S.C. § 3553(a) support reducing his sentence.  (*Id.* at PageID.3020).  The Government responded to Black's *pro se* motion for compassionate release and the response motion for compassionate release subsequently filed by his counsel, Ms. Ellis.  (ECF Nos. 196, 201).  The Government states that only one inmate at FCI Gilmer has COVID-19 and that none of Black's medical conditions increase his risk of contracting severe illness from COVID-19 (ECF No. 196, PageID2780).  The Government also maintains that Black is a danger to society.  (*Id.* at PageID.2778).  Further, the Government challenges as inaccurate, Black's claim that he suffers from Hepatitis C and chronic obstructive pulmonary disease as stated in his motion.  (ECF No. 201).

### a.  Health Conditions/Extraordinary and Compelling Reasons

In his *pro se* motion, Black states that he suffers from asthma and liver disease.  (ECF No. 192, PageID.2752).  Further, he asserts that doctors diagnosed him with osteochondromatosis, a bone disorder, in January of 2020.  *Id.*  He states that he has had two surgeries to treat tissue damage in his right shoulder, and that he needs a third surgery to replace his entire shoulder joint.  *Id.*  Black also asserts that he suffers from mental illness, including paranoid delusional disorder ("PDD") and post-traumatic stress disorder ("PTSD").  In the briefing filed by his counsel, Black specifies his medical conditions as: asthma, chronic Hepatitis C, and COPD.

5

(ECF No. 199, PageID.3018).  The Government contends that Black's asthma is mild and well-controlled, and that he does not suffer from Hepatitis C or COPD. (ECF No. 196, PageID.2781; ECF No. 201, PageID.3028).  The Government also argues that Black's most serious health conditions—a torn rotator cuff and arthritis in his shoulder—do not increase his risk of severe illness if he contracts COVID-19.  (ECF No.196, PageID.2780).

### i.  **Asthma**

Black suffers from asthma.  (ECF No. 199, PageID.3018).  The Centers for Disease Control and Prevent ("CDC") website states that people with moderate to severe asthma "might be at an increased risk for severe illness from the virus that causes COVID-19."  Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://perma.cc/CY2D-C688#asthma.  Black's medical records suggest that his asthma is mild—not moderate to severe—and well-controlled.  For instance, on July 3, 2019, Black's asthma was reported to be "[s]table and mild" during a clinic visit.  (ECF No. 197-1, PageID.2854).  Black reported that he rarely took his rescue inhaler did not need to use his inhaler daily. *Id.*  More recently, consistent with the July 2019 report, Black's medication orders from May 22, 2020 show a prescription for an inhaler that is not to be used daily. (*Id.* at PageID.2974).

The medical records before the court show that Black's asthma is stable, mild, and does not present him with routine medical problems.  As noted, only moderate to severe asthma carries the possibility of increased risk for severe illness from COVID-19 according to the CDC.  For these reasons, the court finds that Black's asthma does not present an extraordinary and compelling reason to grant compassionate release.

## ii. **Hepatitis C**

Black also asserts that he has chronic Hepatitis C.  (ECF No. 199, PageID.3018).  Hepatitis C is a liver disease. The CDC website states that chronic liver disease, especially cirrhosis (scarring of the liver), "may increase [the] risk [of] severe illness from COVID-19."  Centers for Disease Control and Prevention, *People with Certain Medical Conditions, Liver Disease*, https://perma.cc/CY2D-C688#liver-disease.  The CDC website does not state a specific COVID-19 risk for Hepatitis C in particular.  Notably, courts have routinely denied motions for compassionate release for defendants who have Hepatitis C.  *United States v. Garmany*, No. 3:18-CR-89-PLR-DCP-2, 2020 WL 4923956, at *2 (E.D. Tenn. Aug. 21, 2020).  In *Garmany*, the 20-year old defendant suffered from hepatitis C, asthma, and hypertension.  The court stated that she suffered from "several serious physical conditions," but, she did not provide the court with any medical records showing that she was suffering serious consequences from her conditions.  *Id.*  The

7

court also noted that the defendant did not suffer from serious functional or cognitive impairment. *Id.*

Similarly, the court also denied compassionate release in *United States v. Banner*, No. 2:12-CR-093, 2020 WL 4289597, at *3 (E.D. Tenn. July 27, 2020). In *Banner*, the defendant had Hepatitis C and moved for compassionate release. The court denied the motion, stating that it did not have evidence about the impact that the defendant's Hepatitis C had on him. *Id.* The court stated that it did not have information about whether people with Hepatitis C had an increased risk for getting COVID-19 or having severe COVID-19 symptoms, although the court noted that people with liver disease might be at higher risk for severe illness from COVID-19. *Id.* The court also concluded that the defendant's medical conditions did not "substantially diminish his ability to provide self-care within the prison environment." *Id.*

The defendant in United *States v. Amos* was denied compassionate release under similar circumstances. No. 1:18-CR-00014, 2020 WL 3642495, at *4 (M.D. Tenn. July 6, 2020). In *Amos the* defendant had chronic bronchitis, hepatitis C and asthma. *Id.* The court observed that the defendant did not reference anything in his medical records to support his contention that he suffered from chronic bronchitis or COPD. *Id.* The court also noted that it could not rely on the pre-sentence report's statement that the defendant reported having certain medical

8

conditions because a layperson's understanding of his condition could be inaccurate, outdated, or exaggerated. *Id.* These observations led the court to conclude that the defendant did not show that his Hepatitis C put him at an increased risk of severe illness from COVID-19. *Id.*

The same was true in *United States v. Gutierrez*, No. 6: 14-020-DCR-1, 2020 WL 4453746, at *2 (E.D. Ky. Aug. 3, 2020), *reconsideration denied*, No. CR 6:14-020-DCR-1, 2020 WL 4949719 (E.D. Ky. Aug. 24, 2020). The defendant in *Gutierrez* suffered from COPD, asthma, Hepatitis C, a colostomy problem, myocardial infarction, and a small bowel obstruction. The court stated that "[e]ven assuming the defendant currently has the same or similar medical problems, which are serious, he has not shown that any of them (together or in combination) constitute a terminal illness or that they substantially diminish his ability to provide self-care. The risk of contracting coronavirus does not alter this analysis." *Id.*

Importantly, Black's medical records indicate that his Hepatitis C has resolved. Indeed, his medical records from April 18, 2019 state that his Hepatitis C was non-detected and resolved. (ECF No. 197-1, PageID.2864, 2910). And the medical records do not otherwise indicate that his Hepatitis C infection resurfaced at a later date. *See generally* ECF No. 197-1. Even if Black suffers from Hepatitis C, he does not indicate how the illness affects him such that he requires compassionate release. As analyzed above, many courts within the Sixth Circuit

have denied compassionate release to defendants with Hepatitis C, noting that Hepatitis C is not a terminal illness, that having Hepatitis C has not been shown to reduce an individual's ability to provide self-care, and that the risk for developing severe illness from COVID-19 due to Hepatitis C infection is unknown.  The same is true here.  The court is not clear what effect Hepatitis C may have on COVID-19.  The CDC website does not list Hepatitis C as a specific medical condition that may increase the risk of severe illness from COVID-19, and the website only states that liver disease "may" increase the risk.  Without current medical evidence that Black suffers from Hepatitis C, the effects that Hepatitis C has on him, and the effect that COVID-19 has on people with Hepatitis C, the court cannot grant Black compassionate release on this ground.

### iii.  COPD

Black also states that he suffers from COPD.  (ECF No. 199, PageID.3018).  The CDC website states that having COPD "is known to increase [the] risk of severe illness from COVID-19."  Centers for Disease Control and Prevention, *People with Certain Underlying Medical Conditions, COPD, cystic fibrosis, pulmonary fibrosis, and other chronic lung diseases*,  https://perma.cc/CY2D-C688#copd.  And courts have granted compassionate release to defendants who have COPD.  *See Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) (Tarnow, J.); *United States v. Gonzalez*, 451 F.

Supp. 3d 1194 (E.D. Wash. 2020). In *Miller*, the plaintiff suffered from coronary artery disease, COPD, hypertension, Hepatitis C, liver cancer, heart disease, and cirrhosis of the liver. *Id.* at *1. The court reasoned that the plaintiff was in a vulnerable age group and that he suffered from chronic lung disease, a serious heart condition, and liver disease—all conditions that gave him a higher risk of severe illness from COVID-19 according to the CDC. *Id.* at *4. In *Gonzales*, the defendant was 69 years old and also suffered from COPD and "significant emphysema." *Gonzalez*, 451 F. Supp. 3d at 1194. The defendant stated that her medical condition had worsened since she was imprisoned without her inhaler. *Id.* The court granted the defendant compassionate release, noting that she was in a local jail that had a constant turnover of new people coming into the facility and that she was in a vulnerable age group. *Id.*

On the other hand, another court within this district denied a motion for compassionate release to a defendant who suffered from COPD/emphysema, had lung surgery, had rotator cuff injuries in both shoulders, and degenerative disc disease in his lower spine. *United States v. Shaw*, No. 15-CR-20750, 2020 WL 4435169, at *1 (E.D. Mich. Aug. 3, 2020) (Friedman, J.). The court stated that COPD and emphysema were known to increase the risk of severe illness from COVID-19. *Id.* However, the defendant failed to present anything to the court

beyond speculation that he would contract COVID-19 and suffer serious complications.  *Id.*

As an initial matter here, Black has not demonstrated that he suffers from COPD.  His medical records do not show that he has COPD or that he has ever been treated for COPD.  To the contrary, on December 6, 2019, December 11, 2019, and December 17, 2019, his medical records state that he does not have a history of COPD or emphysema.  (ECF No. 197-1, PageID.2870, 2877, 2925).  Black's motion cites his pre-sentence report for his assertion that he has COPD.  However, as the *Amos* court concluded, *supra*, a court should not solely rely on a layperson's understanding of his condition stated in a pre-sentence report.  *Amos*, 2020 WL 3642495, at *4.  COPD is the most serious of Black's purported conditions that might justify compassionate release.  However, without any indication that he suffers from COPD in his medical records, or the effects that COPD has on him, this court cannot consider Black's compassionate release based on COPD.

iv.  **Mental Illness and Shoulder Injury**

Black asserts that he also suffers from (1) osteochondromatosis in his right shoulder, a condition which causes damage to the joints, and (2) mental illness, including paranoid delusion disorder (PDD) and PTSD. (ECF No. 199,

12

PageID.3018).  Black's medical records indicate that he does suffer from osteochondromatosis.  (ECF No. 197-1, PageID.3006).  His medical records also show that he has had a rotator cuff tear, has had prior surgery on his shoulder, and has "severe osteoarthritic changes."  (*Id.* at PageID.2837).  Black's medical records also show that he does suffer from PDD and PTSD but has refused medication for it.  (*Id.* at PageID.2986, 2909).  Black explains that he has refused medication for his mental illness while in custody because he has had several negative side effects from taking psychotropic medications.  (ECF No. 199, PageID.3021).

Although Black's medical records show that he suffers from PDD, PTSD, osteochondromatosis, and arthritis, Black has failed to show how COVID-19 affects any of these ailments.  These conditions do not interfere with Black's breathing or involve his respiratory system;[2] therefore, it is not immediately clear to the court that these conditions warrant compassionate release due to the spread of COVID-19.  Further, Black has also not demonstrated that any of these conditions interfere with his ability to provide self-care or otherwise demonstrate a serious functional or cognitive impairment.  For these reasons, the court does not find that Black's mental illness and shoulder injury are extraordinary or compelling circumstances that justify compassionate release.

---

[2] To the extent that ailments involving other systems of the body may increase the risk of severe complications from COVID-19, Black also has not offered any evidence establishing the same.

13

### b. FCI Gilmer

Black argues that West Virginia, where FCI Gilmer is located, continues to have an increase in COVID-19 cases.  (ECF No. 199, PageID.3014).  Further, he argues that FCI Gilmer is inconsistent in reporting cases and it has only tested about 12% of the facility's population for COVID-19.  (*Id.* at PageID.3014–15). Therefore, Black asserts that the prison conditions provide an extraordinary and compelling reason to grant him compassionate release.  *Id.*  The Government asserts that as of September 8, 2020, only one inmate at FCI Gilmer has COVID-19.  (ECF No. 196, PageID.2780).  During the course of the pandemic, the Government states that only 5 other inmates and one staff person contracted COVID-19 and that they have all recovered.  *Id.*  Therefore, Black is not in clear danger of contracting COVID-19 at Gilmer or suffering fatal consequences if he does contract COVID-19.  *Id.*

Several courts have considered motions for compassionate release for inmates located at FCI Gilmer.  And a number have found the evidence of COVID-19 at FCI Gilmer is an insufficient reason to grant compassionate release.

The district court of Minnesota denied a motion for compassionate release for an inmate at FCI Gilmer.  *United States v. Bledsoe*, No. 19-CR-00036 (SRN/HB), 2020 WL 4559424, at *4 (D. Minn. Aug. 7, 2020).  The court

14

concluded that the defendant did not demonstrate that he had "a particularized risk of contracting COVID-19 at FCI-Gilmer." *Id.* The court noted that 6 inmates who had COVID-19 had since recovered; therefore, FCI Gilmer appeared to be successful at stopping the spread of the virus. *Id.* The court further reasoned that there was no indication that FCI Gilmer could not handle a COVID-19 outbreak. *Id.*

The southern district of West Virginia reached a similar conclusion. *United States v. Carter*, No. 2:19-CR-00078, 2020 WL 3458598, at *5 (S.D.W. Va. June 25, 2020). The defendant in *Carter* moved for compassionate release from FCI Gilmer during the pandemic, citing various mental health disorders, including PTSD, borderline personality disorder, and major depressive disorder. *Id.* The court noted that 5 inmates at FCI Gilmer had tested positive for COVID-19. *Id.* But it stated that, "[w]hile any number of COVID-19 cases within the prison context is great cause for concern, simply a generalized assertion of the existence of the pandemic alone cannot independently justify compassionate release." *Id.* The court noted that it did not have evidence from which to assess the interplay between defendant's mental health conditions, the prison conditions at Gilmer, and COVID-19. *Id.* Therefore, it could not find extraordinary and compelling reasons to reduce the defendant's sentence. *Id.*

15

The central district of Illinois also denied a motion for compassionate release from a defendant incarcerated at FCI Gilmer. *United States v. Downing*, No. 18-CR-40037-JES-JEH, 2020 WL 2789790, at *2 (C.D. Ill. May 29, 2020). The defendant was 43 years old and suffered from diabetes, COPD, asthma, anemia, type 2 diabetes, and high blood pressure. *Id.* at *1. The court noted that "[t]he mere presence of COVID-19 in a particular prison cannot justify compassionate release." *Id.* at *2 (quoting *United States v. Melgarejo*, No. 12-cr-20050, ECF Doc. 41 at p. 5 (C.D. Ill. May 12, 2020)). It further stated that the defendant was relatively young, that FCI Gilmer had very few COVID-19 cases, unlike other prisons, and that the number of cases at Gilmer had not increased since the defendant had filed his motion. *Id.* at *2. The court reasoned that COVID-19 was still spreading in the general public; therefore, it was unclear if the defendant would be safer from contracting COVID-19 if the court released him. *Id.*

Conversely, at least one court in this district did grant compassionate release to an inmate at FCI Gilmer but based partially on facts distinguishable from those present here. *United States v. Williams*, No. 15-20462, 2020 WL 4040706, at *2 (E.D. Mich. July 17, 2020) (Lawson, J.). In *Williams*, the defendant was over 65 years old, had served 42% of his prison sentence, and moved for compassionate release. *Id.* The court noted that the absence of presently active and identified cases of COVID-19 at FCI Gilmer was not "reassuring" given that COVID-19 was

16

spreading rapidly among "the public at large." *Id.* at 4. The court further highlighted the Bureau of Prison's "admitted failure to implement any comprehensive prophylactic testing program" and cast doubt on the validity of the figures on COVID-19 infection rates that the prison was reporting. *Id.* The court also concluded that the defendant was not a danger to the public, despite being a repeat offender, because he was incarcerated for robberies involving a toy gun and he had only one prison infraction since being incarcerated. *Id.*

As of October 7, 2020, FCI Gilmer had 3 inmates who are currently have COVID-19, 1 staff person who is positive for COVID-19, 0 deaths from COVID-19, and 13 inmates and 2 staff who have recovered from COVID-19. Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://perma.cc/ZQ5J-GJGX.

FCI Gilmer has not reported any deaths from COVID-19. Currently, only 4 people—3 inmates and 1 staff person—have COVID-19, and 15 people have recovered. These statistics demonstrate that FCI Gilmer has been relatively successful in curbing the spread of the virus. Nine additional people at FCI Gilmer have contracted COVID-19 and recovered since the Government filed its response on September 11, 2020 (previously six people had recovered, now 15 people have recovered). Only four people at Gilmer currently have COVID-19, compared to one person who had it when the Government filed its response on September 11, 2020. So, although more people have contracted the virus since the Government

17

filed its response, not a large amount of people have contracted the virus and most of them have recovered.  Black contends that the Bureau of Prisons ("BOP") has a low testing rate for COVID-19, so the court should not rely on the number of confirmed cases at FCI Gilmer.  However, irrespective of the number of confirmed cases, FCI Gilmer has not reported any COVID-19 deaths and there is no evidence in the record of other severe outcomes.  While the infection of any person associated with the facility is regrettable and worthy of substantial efforts to avoid, it is the existence or likelihood of severe outcomes that might evidence the presence of extraordinary circumstances.  And Black has not established any such likelihood here.  Indeed, based on the facts referenced above, it appears that, while not successful in avoiding all transmissions and contractions of COVID-19, Gilmer is sufficiently addressing the virus to protect inmates and staff from succumbing to the virus.  Gilmer's precautionary measures include, for example, its visiting procedures that require visitors' temperature to be taken and limits the number and duration of visitors.  U.S. Department of Justice Federal Bureau of Prisons, *Memorandum for FCI and FPC Gilmer Visitors*, https://perma.cc/8Y5N-7HD3.  Further, FCI Gilmer just resumed social visiting on October 2, 2020.  *Id.*

        For the reasons discussed above, the court concludes that the defendant has not demonstrated that incarceration at FCI Gilmer will likely result in him

contracting COVID-19 and that it will cause him to suffer more severe symptoms

of COVID-19.  Therefore, defendant's incarceration at Gilmer does not present an

extraordinary and compelling reason to grant him compassionate release.[3]

### c.  Danger and 18 U.S.C. 3553(a) Factors

The Government also contends that Black is a danger to the community

under 18 U.S.C. §3142(g) and that the sentencing factors under § 3553(a) do not

support release.  These factors include, but are not limited to:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

---

[3] Black submitted a letter to the court which appeared on the docket on the same day as the hearing.  To the extent that Black's letter to the court discusses his motion for compassionate release, the court has already found that Black cannot have hybrid representation.  (ECF No. 208.).  Nevertheless, the court has reviewed Black's letter and it does not change the court's conclusion of the present motion for compassionate release.  Black's letter states that he previously suffered from asthma that was severe enough to be classified as COPD.  (ECF No. 207, PageID.3053).  He also states that he has rhinitis and underwent a surgical septoplasty to try and improve his nasal breathing.  (*Id.*).  As this court discussed above, Black's medical records indicate that he does not currently suffer from COPD.  Further, his medical records state that his rhinitis went into remission as of December 17, 2019.  (ECF No. 197-1, PageID.2924).  Nothing else in Black's medical records indicate that he currently suffers from any respiratory ailment that is not currently under control or that he otherwise has difficulty breathing.

[ . . . ]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553. The Government asserts that Black is infatuated with guns, has sought other people to acquire guns for him, used aliases to hide his conduct from law enforcement, obstructed justice during the trial for which he is currently incarcerated for, and has had a long history of misconduct while incarcerated, as outlined in the Government's sentencing memo.  (ECF No. 196, PageID.2796–99). The Government further contends that Black is extremely violent and has seven adult convictions in his record.  (*Id.* at PageID.2770).  Black responds that the instant case is his first federal conviction.  (ECF No.199, PageID.3021).  He also states that he suffers from mental illness, will seek mental health counseling if released, and has refused medications for his mental illness while incarcerated due to negative side effects and allergic reactions he has had to the medications.  *Id.* Black also asserts that he had difficulty adjusting to life in prison but has not had any disciplinary actions brought against him for approximately three years.  *Id.* Black states that he wants to be a better version of himself and that he would move to Connecticut to live with his family if he is released.  *Id.*  Black further states that this court can impose home confinement to match the remaining term of his custodial sentence.  (*Id.* at PageID.3022).

While the court appreciates Black's aspirations to become a better version of himself, the record in this case gives the court serious concerns about the danger to society if he were to be released at this juncture.  Black is a repeat offender who was convicted in this court for illegally possessing a number of real firearms, unlike the *Williams* defendant who was granted compassionate release after being incarcerated for perpetuating robberies with a fake gun.  Moreover, Black's criminal history is notable for both its length and its reflection of violence, as outlined in the probation department's pre-sentence report.  And statements Black made at the time of his sentencing provide little solace that he will refrain from violence.  (ECF No. 170, PageID.2471).  Indeed, he has also committed various assaults while incarcerated, unlike the *Williams* defendant, who had one infraction for phone abuse and disruption while incarcerated.  And due to a number of infractions involving the possession of weapons while incarcerated, the BOP transferred Black to a high security prison in Kentucky.  (ECF No. 170-3, PageID 2605-11).  Black has not countered with sufficient evidence to show, nor does the record reflect, that he would not present a danger to the community.  The nature and circumstances of the underlying offense along with Black's obstruction of justice during trial and prison misconduct weigh against release.

21

**IV.   CONCLUSION**

The Defendant has not demonstrated that extraordinary and compelling reasons—his health conditions and/or the COVID-19 pandemic—justify compassionate release.  Therefore, for the reasons discussed herein, the court DENIES Black's motion for compassionate release without prejudice.

SO ORDERED.


Dated:          October 28, 2020

s/Stephanie Dawkins Davis
HON. STEPHANIE DAWKINS DAVIS
United States District Court Judge
